IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRENDA DUARTE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 18 C 1227 ) ) Judge Jorge L. Alonso |
| CLIENT SERVICES, | ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Brenda Duarte has brought this suit against defendant Client Services, Inc., ("CSI"), alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. Before the Court is defendant's motion for judgment on the pleadings [25]. For the reasons set forth below, the motion is granted in part and denied in part.

**BACKGROUND**

Plaintiff allegedly incurred a debt on her Capital One Bank (USA) N.A. consumer credit account. (Dkt. 1, ¶ 11.) Plaintiff was unable to pay the alleged debt and subsequently defaulted on it. (*Id*. ¶ 12.) CSI, a debt collection agency, was later hired to collect the debt from plaintiff. (*Id*. ¶ 13.)

On November 27, 2017, CSI sent an initial collection letter (the "First Letter") to plaintiff regarding the alleged debt. (*Id*. ¶ 14; Ex. C.) The First Letter contained information about the alleged debt, including the identity of the current creditor, an account number, and a current balance. (*Id*. ¶ 15.) Plaintiff alleges that the First Letter was a "communication" as defined by Section 1692a(2) of the FDCPA. (*Id*. ¶ 16.)

The First Letter states in part, "CAPITAL ONE BANK (USA), N.A., has placed the above account with our organization for collections." (*Id.*, Ex. C.) The letter also provides, in part:

| | |
|---|---|
| Balance Due At Charge Off: | $415.35 |
| Interest: | $0.00 |
| Other Charges: | $0.00 |
| Payments Made: | $0.00 |
| **Current Balance:** | **$415.35** |

(*Id.*) (emphasis in original). Plaintiff says that she believed, as an unsophisticated consumer would, that other charges would begin to accrue because CSI included the phrase "Other Charges" in the letter. (Dkt. 1, ¶ 20.) But plaintiff's assumption was incorrect—CSI did not intend to assess other charges or collection costs. (*Id.* ¶ 21.) To avoid confusion, plaintiff says that CSI should have omitted the phrase "Other Charges." (*Id.* ¶ 22.)

In January 2018, CSI sent another letter (the "Second Letter") to plaintiff regarding the alleged debt, offering plaintiff the opportunity to settle the account if she paid $168.00 by February 1, 2018. (*Id.* ¶¶ 30, 33; Ex. D.) The Second Letter contained information regarding the alleged debt, including the identity of the original creditor, an account number, and a current balance. (*Id.* ¶ 31.) Plaintiff says that the Second Letter was also a "communication" as defined by the FDCPA. (*Id.* ¶ 32.) The letter states, in part:

> This offer is valid until 2/1/2018. If payment in full of the statement amount is not received in our office by this date, this offer will be withdrawn. Please note, **we are not obligated to renew this offer**.

(*Id.* ¶ 34; Ex. D) (emphasis added). Plaintiff says that she believed, as an unsophisticated consumer would, that the offer would expire on February 1, 2018. (Dkt. 1, ¶ 35.) Plaintiff's assumption was once again incorrect.

CSI then sent another letter (the "Third Letter") to plaintiff in February 2018 with the same settlement offer and same safe harbor language, "we are not obligated to renew this offer." (*Id.* ¶

2

36; Ex. E.) Plaintiff alleges that CSI made a false statement to coerce her into accepting the January 2018 settlement offer: if she did not accept the offer by February 1, 2018, then the offer would no longer be available to her. (*Id.* ¶ 38.)

Plaintiff filed this suit, alleging that CSI violated the FDCPA when it (1) falsely threatened to collect "Other Charges," (2) failed to effectively state the amount of debt in the First Letter, and (3) made a false statement and threatened an action it did not intend to take by presenting an offer of settlement with a false date of expiration. (*Id.* ¶¶ 48-50.)

CSI has filed a motion for judgment on the pleadings, arguing that the inclusion of the phrase "Other Charges" could not lead an unsophisticated consumer to believe that other charges would later accrue. CSI also says that its settlement offer contained safe harbor language and, therefore, could not be misleading.

Plaintiff responds by saying that the inclusion of the phrase "Other Charges" was deceptive in that it would lead an unsophisticated consumer to guess about the economic consequences of failing to pay the debt immediately. Plaintiff also says that a settlement offer may be found to be misleading even with the inclusion of safe harbor language.

**STANDARD**

Rule 12(c) permits a party to move for judgment on the pleadings, which consist of the "the complaint, the answer, and any written instruments attached as exhibits." N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend, 163 F.3d 449, 452 (7th Cir. 1998) (citing Fed. R. Civ. P. 10(c)). A motion for judgment on the pleadings under Rule 12(c) is governed by the same standards as a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). *Hayes v. City of Chi.*, 670 F.3d 810, 813 (7th Cir. 2012). Accordingly, in considering a 12(c) motion, the court accepts all well-pleaded allegations in the complaint as true and draws all reasonable

3

inferences in the plaintiff's favor. *Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). The motion is properly granted only if "it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Id.* (quoting *Thomason v. Nachtrieb*, 888 F.2d 1202, 1204 (7th Cir. 1989)).

## DISCUSSION

**The First Letter – Violation of Section 1692e**

Plaintiff first alleges that CSI violated Section 1692e of the FDCPA when it included the phrase "Other Charges" in the First Letter. "The FDCPA broadly prohibits the use of any 'false, deceptive, or misleading representation or means in connection with the collection of any debt.'" *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018); 15 U.S.C. § 1692e. The purpose of the statute is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e).

The Court evaluates an FDCPA claim by using the objective "unsophisticated consumer" standard. *Gruber v. Creditors' Prot. Serv., Inc.*, 742 F.3d 271, 273 (7th Cir. 2014). This standard protects the consumer who is "uninformed, naïve, or trusting, yet admits an objective element of reasonableness." *Gammon v. GC Serv's Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). "The reasonableness element in turn shields complying debt collectors from liability for unrealistic or peculiar interpretations of collection letters." *Id.* While the unsophisticated consumer may be "uninformed, naïve, or trusting," he also "possesses rudimentary knowledge about the financial world" and does not interpret collection letters in a "bizarre or idiosyncratic fashion." *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000). Under this standard, a statement will not be considered confusing or misleading unless "a significant fraction of the population would be similarly misled." *Id.* Courts consider whether "someone of modest

4

education and limited commercial savvy would likely be deceived by" a dunning letter. *O'Boyle v. Real Time Resolutions, Inc.*, 910 F.3d 338, 344 (7th Cir. 2018). Generally, whether a communication is misleading is "a question of fact that, if well-pleaded, avoids dismissal on a Rule 12(b)(6) motion." *Zemeckis v. Global Credit & Collection Corp.*, 679 F.3d. 632, 636 (7th Cir. 2012) (internal citation omitted). However, a plaintiff fails to state a claim if the court can determine from the face of the letter in question that "not even a significant fraction of the population would be misled by it." *Id*.

CSI seeks judgment on the pleadings, arguing that the letter clearly informed plaintiff of the amount owed and provided her with an itemization of costs. CSI further argues that it also sent an "Account Resolution Offer" along with the First Letter, which states that "no interest will be added to your account balance through the course of [CSI] collection efforts concerning your account." (*See* Dkt. 25, pg. 4; Dkt. 1, Ex. C.) CSI says that, when viewed as a whole, the First Letter is not false, deceptive, or misleading.

The Court does not agree. The phrase "Other Charges" along with an amount of "$0.00" listed could have implied to plaintiff, as well as the unsophisticated consumer, that plaintiff could have incurred additional charges. While CSI points to the Account Resolution Offer, which states that *no interest* would be added to plaintiff's account during the collection efforts, the First Letter and related Account Resolution Offer make no mention of *other charges* being added to her alleged debt during the collection process. In fact, the First Letter has separate line items for "Interest" and "Other Charges." (Dkt. 1, Ex. C.) An unsophisticated consumer, like plaintiff, could reasonably have believed that she would incur other charges if she did not pay the debt. *See Wood v. Allied Interstate, LLC*, Case No. 17 C 4921, 2018 WL 2967061, at *2 (N.D. Ill. June 13, 2018) (finding a dunning letter, which stated that fees and collection costs stood at "$0.00," could

reasonably be read to imply that such charges would begin to accrue if the plaintiff did not repay the debt). Plaintiff's interpretation of the First Letter is not bizarre or irrational. On these facts, CSI has not shown that "not even a significant fraction of the population would be misled by" by the phrase "Other Charges" in the First Letter. *See Zemeckis*, 679 F.3d at 636. Accordingly, this Court finds that plaintiff has adequately alleged a violation of Section 1692e of the FDCPA.

**The First Letter – Violation of Section 1692g(a)(1)**

Plaintiff next alleges that CSI violated Section 1692g(a)(1) of the FDCPA because it did not effectively state the amount of debt to plaintiff in the First Letter when it included the phrase "Other Charges," even though other charges would never actually accrue. Section 1692g(a)(1) provides:

> (a) Notice of debt; contents
>
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (1) the amount of the debt;

15 U.S.C. § 1692g(a)(1). The Seventh Circuit has explained that "a dunning letter must state the amount of the debt sufficiently clearly that the recipient is unlikely to misunderstand it." *Taylor v. Cavalry Inv., L.L.C.*, 365 F.3d 572, 574 (7th Cir. 2004). As previously discussed, plaintiff could reasonably have believed that she would incur other charges if she did not pay the debt. The First Letter is "neither obviously misleading nor plainly clear . . . it may be misleading to the comparatively unsophisticated debtor." *See Lemke v. Escallate, LLC*, Case No. 17 C 5234, 2019 WL 1254901, at *5 (N.D. Ill. March 19, 2019) (finding that plaintiff's dunning letter with an itemization line for "Accrued Interest" with a listed amount of "$0.00" could be misleading to an

unsophisticated consumer). Accordingly, the Court finds, on these facts, that plaintiff has adequately alleged a violation of Section 1692g(a)(1) of the FDCPA.

**The Settlement Offers – Violation of Section 1692e**

Plaintiff next alleges that CSI made a false statement and threatened an action that it did not intend to take, in violation of Sections 1692e(5) and 1692e(10) of the FDCPA, when it presented a settlement offer with a false expiration date. As noted, Section 1692e prohibits the use of false, deceptive, or misleading representations in connection with the collection of a debt. 15 U.S.C. § 1692e. Specifically, Section 1692e prohibits "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken" and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(5), (10). To determine whether a dunning letter violates these provisions of the FDCPA, courts employ the "unsophisticated consumer" standard and evaluate how an unsophisticated consumer would perceive the statements in the settlement offers. *See Bass v. Portfolio Recovery Assoc., LLC*, Case No. 17 C 8345, 2018 WL 4005199, at *1 (N.D. Ill. Aug. 22, 2018); *see also Boucher*, 880 F.3d at 366.

CSI contends that this claim fails as a matter of law because the settlement letters at issue contained the following safe harbor language: "we are not obligated to renew this offer." (*See* dkt. 1, Exs. C, E.) In making this argument, CSI relies on *Evory v. RJM Acquisitions Funding, L.L.C.*, 505 F.3d 769 (7th Cir. 2007) where the Seventh Circuit determined that unsophisticated consumers could be protected against receiving a false impression of a debt collector's options by the inclusion of the following language: "[w]e are not obligated to renew this offer." 505 F.3d at 776. The court noted that the word "obligated" is sufficient to lead an unsophisticated consumer to realize that a renewal is possible, but not assured. *Id*.

Moreover, another court in this district recently addressed a similar issue regarding whether the issuance of multiple settlement offers negated the validity of the safe harbor language. *See Bass*, 2018 WL 4005199 (N.D. Ill. Aug. 22, 2018). In *Bass*, the defendant sent the plaintiff a letter seeking to collect a debt he owed. *Id*. at *1. The letter provided the plaintiff with three payment options and included the following safe harbor language: "we are not obligated to renew this offer." *Id*. at *1. When plaintiff did not pay, the defendant sent plaintiff a second letter offering the same payment options as the first letter and required payment by a new, later date. *Id*. The plaintiff filed suit and alleged that the defendant violated Section 1692e because its first letter contained a false statement that the settlement offer would expire on a specified date, which was subsequently extended by issuance of the second settlement offer. *Id*. The court granted defendant's motion to dismiss, holding that the issuance of the settlement offers was not misleading. *Id*. at *2. The court noted that the defendant's letter contained the exact language discussed by the Seventh Circuit in *Evory*. *Id*. The court also reasoned that there was no indication in *Evory* that the safe harbor would not apply to situations with multiple settlement letters. *Id*.; *see also Evory*, 505 F.3d at 775 (noting that "frequently [debt collectors] *renew their offers* if the consumer fails to accept the initial offer.") (emphasis added).

This Court agrees with the reasoning in *Bass* and finds that the settlement offers issued by CSI are not in violation of Section 1692e. *See also Taylor v. Client Servs., Inc.*, Case No. 17 C 5704, 2018 WL 4355819 (N.D. Ill. Sept. 12, 2018) (finding settlement letters that contained the safe harbor language identified in *Envoy* sufficient to avoid FDCPA liability.) An unsophisticated consumer is protected from receiving false impressions of their options when safe harbor language is included in a settlement offer. By including the safe harbor language, CSI's settlement letters

8

were not misleading under Section 1692(e). Accordingly, this Court grants defendant's motion for judgment on the pleadings as it relates to this theory of liability.

## CONCLUSION

For the aforementioned reasons, defendant Client Services, Inc.'s motion for judgment on the pleadings [25] is granted in part and denied in part.

SO ORDERED. ENTERED: March 29, 2019

_____
HON. JORGE ALONSO
United States District Judge